UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| VADIM VLADIMIROVICH SAVINSKIY, <br><br> Petitioner, <br><br> v. <br><br> PAMELA BONDI et al, <br><br> Respondents. | CASE NO. 2:26-cv-00835-TL <br><br> ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Vadim Savinskiy's Petition for Writ of Habeas Corpus. Dkt. No. 1. Respondents are Pamela Bondi, United States Attorney General; MarkWayne Mullin, Secretary, United States Department of Homeland Security ("DHS"); Laura Hermosillo, Acting Seattle Field Office Director, Enforcement and Removal Operations ("ERO"), United States Immigration and Customs Enforcement ("ICE"); Bruce Scott, Warden, Northwest ICE Processing Center ("NWIPC"); and ICE. Petitioner, who is presently detained at NWIPC (*id*. at 3), seeks: (1) his release from custody; (2) an order that prevents his re-detention without a hearing before a neutral decision maker at which the Government bears the burden of

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released; (3) an order that Respondents may not re-detain Petitioner unless Respondents comply with Petitioner's proposed conditions; (4) an order that prevents Petitioner's removal to a third country without notice and a meaningful opportunity to respond; and (5) an order that prevents Petitioner's removal to a third country on the basis that such removal represents unconstitutional punishment (*id*. at 26–27). Having reviewed the Petition, Respondents' Return[1] (Dkt. No. 5), Petitioner's Traverse (Dkt. No. 8), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the Petition and ORDERS Petitioner's immediate release.

## I.    BACKGROUND

At age 11, Petitioner legally immigrated to the United States in 1992 as a refugee with his family.[2] Dkt. No. 1 at 6. In the aftermath of the dissolving of the Union of Soviet Socialist Republics ("USSR"), Petitioner and his family fled their home country to escape persecution for their Christian faith. *Id*. at 4–5. Shortly after his arrival in the United States, Petitioner obtained a green card and lived as a Lawful Permanent Resident ("LPR") in the Pacific Northwest. *Id*. at 5. Prior to his present detention, Petitioner lived in Damascus, Oregon, with his wife and six-year-old son. *Id*. at 6. Petitioner's wife and minor son are both U.S. citizens. *Id*. at 5. His son has significant medical and developmental needs. *Id*. Petitioner's siblings are also U.S. citizens, and he has no family outside of the United States. *Id*.

---

[1] As used in this order, the term "Respondents" includes all Respondents except Respondent Scott. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

[2] There is a dispute between the Parties as to Petitioner's country of nationality. Petitioner insists he is stateless because his country of birth, the United Soviet Socialist Republic, no longer exists. Dkt. No. 1 at 6. Respondents assert that Petitioner is a Russian citizen (Dkt. No. 5 at 4), although it appears they have never received confirmation of this fact from Russia (Dkt. No. 6 ¶ 9).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

Petitioner's immigration troubles began following a 2008 criminal conviction for Possession of a Controlled Substance. *See* Dkt. No. 7-1 (DHS Form I-862) at 5. On April 21, 2009, ERO officers detained Petitioner and served him a Notice to Appear ("NTA"), placing him in removal proceedings. *Id*. at 2 (NTA). On February 1, 2010, an immigration judge ("IJ") ordered Petitioner removed to Russia. Dkt. No. 7-3 (IJ Removal Order). Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") and, on May 20, 2010, the BIA dismissed the appeal. Dkt. No. 7-2 (DHS Form I-213 Form) at 3. Petitioner appealed the BIA's decision to the Ninth Circuit Court of Appeals (*id*.) and subsequently secured bond (Dkt. No. 6 (Delgado Decl.) ¶ 6). On September 21, 2010, the Government released Petitioner from federal custody. Dkt. No. 6 ¶ 6.

The Ninth Circuit dismissed in part and denied in part Petitioner's appeal. *Id*. ¶ 7; Dkt. No. 7-2 at 3. On November 17, 2011, Petitioner reported to ERO in Portland, Oregon, for an appointment. Dkt. No. 6 ¶ 8. At the appointment, ERO officers asked Petitioner to complete a travel document application to Russia, but Petitioner declined, stating he was from the USSR, not Russia. *Id*. As a result, ERO officers placed Petitioner in federal custody, and transported him to the NWIPC for removal. *Id*. On November 29, 2011, the Ninth Circuit issued its mandate, making Petitioner's removal order final. *Id*. ¶ 7.

Between December 2011 and January 2012, ERO Tacoma sent a prepared travel document application to the Russian consulate. *Id*. ¶ 9. During this time, the Government coordinated with the Russian Consulate to facilitate Petitioner's removal to Russia. *Id*. The Russia Consulate, however, indicated a need to investigate the status of Petitioner's alleged Russian citizenship. *Id*. The Russian consulate estimated this investigation would take roughly three months. *Id*. Ultimately, the Russian Consulate never confirmed that Petitioner is a citizen of Russia and did not issue a travel document. *Id*.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 3

On February 9, 2012, DHS released Petitioner on an Order of Supervision ("OSUP"). *See* Dkt. No. 7-4 (OSUP). Petitioner has multiple criminal convictions arising from conduct committed during his period of supervised release. Petitioner was convicted of a domestic violence offense in Clark County, Oregon, District Court in 2013, and served 300 days in jail. Dkt. No. 7-2 at 4. On November 5, 2024, Petitioner was convicted of Unlawful Use of a Weapon in Clackamas County, Oregon, Circuit Court. *Id.* For that offense, Petitioner served ten days in jail and was ordered 36 months of probation. *Id.* On August 12, 2025, Petitioner was convicted of Hit and Run Vehicle/Property and served 20 days in jail. *Id.* Also in August 2025, ERO became aware of Petitioner's 2024 and 2025 convictions. Dkt. No. 6 ¶ 12. On October 30, 2025, ICE re-detained Petitioner at a scheduled check-in and transported him to the NWIPC. *Id.* ¶ 13. The same day, an ICE officer provided Petitioner with a Notice of Revocation of Release, which outlined that he had violated his OSUP by committing the crimes of Unlawful Possession of a Weapon and Hit and Run Vehicle/Property. Dkt. No. 7-6 (Notice of Revocation of Release) at 2. At the interview, someone's handwriting—it is unclear whether it is the ICE officer's or Petitioner's—wrote: 'Please Don't Revoke My OSUP. I have family here Everyone is a S̶Citizen!! My wife my Son His [*sic*] Having a Surgery Tomorrow At OHSU—Dental. Pleas [*sic*] let me out, Please Don't Revoke Me. Thank You.'" Dkt. No. 7-7 (Informal Interview) at 2. This written note is included in the space that follows typed text on the form which provides, "[a]t the interview, the [noncitizen] made the following oral response regarding the reasons for revocation." *Id.* The informal interview form allows the interviewing officer to indicate whether the noncitizen provided a written statement or not, and whether the noncitizen provided documents or not. *See id.* However, the interviewing officer did not fill out that part of the form. *See id.*

Beginning in December 2025, ERO Tacoma directed Petitioner several times to assist with completing a Russian travel document application. Dkt. No. 6 ¶¶ 14–18. Petitioner maintains that he is not a citizen of Russia and, therefore, has not assisted ERO with securing a travel document to Russia. *Id*.; *See* Dkt. No. 1 at 6. Respondents do not yet have a travel document to Russia for Petitioner (*see* Dkt. 5 at 2), but on February 27, 2026, without the help of Petitioner, ERO Tacoma sent a travel document request package to ERO headquarters for final review and subsequent submission to the Russian consulate. Dkt. No. 6 ¶ 18.

On March 11, 2026, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner asserts that his continued detention violates his due process regulatory rights, the Eighth Amendment, the Convention Against Torture ("CAT") and the Administrative Procedure Act ("APA"). *See generally* Dkt. No. 1. The petition is now fully briefed and ripe for the Court's consideration.

## II.    LEGAL STANDARD

### A.    Habeas Petition Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 8 U.S.C. § 2241(c).

### B.    Injunctive Relief Legal Standard

A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Prongs three and four of the *eBay* factors merge when the Government is the party opposing the issuance of injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has held that a permanent injunction is appropriate where the party can demonstrate it is likely to suffer irreparable injury. *See City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018) ("An injunction is appropriate when the party seeking relief demonstrates that . . . it is likely to suffer irreparable injury that cannot be redressed by an award of damages").

### III.    DISCUSSION

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241 and also invokes the Court's jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as Respondent), and 28 U.S.C. § 1651 (All Writs Act). He asserts six grounds for the relief he seeks: (1) Respondents' continued detention of Petitioner in immigration custody violates the due process clause of the Fifth Amendment (Dkt. No. 1 at 21); (2) Respondents' re-detention of Petitioner violated Petitioner's due process rights (*id*. at 21–22); (3) Respondents failed to follow 8 C.F.R. § 241.13 when they re-detained Petitioner (*id*. at 22–23); (4) Petitioner's substantive due process rights have been violated (*id*. at 23); (5) Respondents' third-country removal policy violates the Fifth Amendment, the INA, the Convention Against Torture, the Administrative Procedure Act ("APA"), and regulatory requirements (*id*. at 23–24); and (6) Respondents' third-country removal policy violates the Fifth and Eighth Amendments (*id*. at 24–25). The Court will address these in turn.

**A.    Continued Detention**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law . . . ." U.S.

Const. amend. V. The Fifth Amendment guarantee of due process applies to removal proceedings. *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). In addition, the Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)).

### 1.    Legal Framework for Detention Under the INA

As a noncitizen with a final order of removal, Petitioner is detained under 8 U.S.C. § 1231. Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) mandates the detention of the noncitizen during the removal period. *Id.* § 1231(a)(2)(A). Finally, Section 1231(a)(6) authorizes the continued detention of noncitizens after the expiration of the removal period:

> [A noncitizen] ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by [the Secretary of Homeland Security][3] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6).

There is no temporal limit on the length of detention in the statute, and the Supreme Court noted in *Zadvydas* that 90 days is not intended to be a statutory maximum, reasoning:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal

---

[3] Although 8 U.S.C. § 1231 refers to "the Attorney General" as having responsibility for detention and removal of noncitizens, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 441(2), 116 Stat. 2135, 2192 (2002), transferred this authority to the Secretary of the Department of Homeland Security. *See also* 6 U.S.C. § 251.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

> period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months."

533 U.S. at 701 (citing Juris. Statement in *United States v. Witkovich,* O.T. 1956, No. 295, at 8–9.)

The *Zadvydas* Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), *id.* at 699, instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized six months as that time limitation. *Id.* at 701. It found that if a statute were to permit indefinite detention of a noncitizen, that would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.*

Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* at 701. However, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

**2.      The Length of Detention Exceeds What Is Presumptively Reasonable**

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has

been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Nevertheless, "for detention to remain reasonable, as the prior period of postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

In the present case, Petitioner's removal order became final on November 29, 2011, when the Ninth Circuit issued a mandate on its dismissal in part and denial in part of Petitioner's appeal. Dkt. No. 6 ¶¶ 6–7. Petitioner was in detention at the time of this mandate and was ultimately released on an OSUP on February 9, 2012. *Id*. ¶¶ 8, 10. Petitioner's current detention period began on October 30, 2025.

Respondents argue that "[t]he Court need not analyze any further" whether Petitioner's detention period violated due process because he "is still in his presumptively reasonably six-month period." Dkt. No. 5 at 8. At the time of this Order, Petitioner's current detention has lasted for just over six months. But it is undisputed that, after his removal order became final, Petitioner was detained between November 29, 2011, and February 9, 2012—a period over two months. Dkt. No. 6 ¶¶ 8, 10. That means that even at the time the instant petition was filed, Petitioner had been detained for over six months since his removal order became final. And, "where a petitioner has been detained and released by ICE multiple times after a final order of removal, 'the clock' on Zadvydas's six-month period of presumptive reasonability does not re-start with each successive detention." *Abubaka v. Bondi*, No. C25-1889, 2025 WL 3204369, at *3 (W.D. Wash. Nov. 17, 2025); *see also Acosta-Ginori v. Bondi*, No. C25-2649, 2026 WL 221509, at *3 (W.D. Wash. Jan. 28, 2026) (noting that *Zadvydas* six-month presumptively reasonable period for pre-removal detention does not restart each time a nonconsecutive detention began); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025) (rejecting government's argument that

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 9

detention period must be consecutive). In any event, Petitioner's current detention has reached six months, and over eight months when including his prior detention.

Therefore, the Court finds that Petitioner's detention exceeds the presumptively reasonable period.

### 3.    Petitioner Has Met His Burden Under *Zadvydas*

Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701. First, Petitioner argues that he is not a citizen of Russia, nor any other former Soviet nation; therefore, removal is not reasonably foreseeable. Dkt. No. 1 at 7. Respondents dispute whether this is true, and neither side offers hard proof of their position. Regardless, the record before the Court indicates at least some support for Petitioner's position. The last time Respondents tried to send a travel document application to Russia, Russia questioned Petitioner's citizenship and stated that due to Petitioner's entry date into the United States, it needed to investigate whether Petitioner was even a citizen of Russia. Dkt. No. 6 ¶ 9. The Russian consulate told Respondents at the time that this process would take three months, but never followed up with Respondents. *Id*. Ultimately, Respondents decided at that time that Petitioner's removal from the United States could not be effectuated. Notably, Respondents do not explain how circumstances regarding the prospect of Petitioner's removal have changed since 2012, and has consistently cited OSUP violations, not the reasonable possibility of removal, as the lawful basis for his re-detention. *See, e.g,* Dkt. No. 5 at 12.

Petitioner supplements his argument by providing that, contrary to Respondents' assertion that Russia will accept Petitioner, "ICE currently lists Russia as a 'Recalcitrant' and 'uncooperative' country for the purpose of immigration removals." *Id*. (citing Congressional Research Service, *Immigration: "Recalcitrant" Countries and the Use of Visa Sanctions to*

*Encourage Cooperation with Alien Removals*, July 10, 2020, https://www.congress.gov /crs_external_products/IF/PDF/IF11025/IF11025.7.pdf [https://perma.cc/524L-PLFF]. Other courts in this District have also noted Russia's history of being uncooperative in helping the United States effectuate removals. *See Magomedov v. Bondi*, No. C26-521, 2026 WL 747102, at *2 (W.D. Wash. Mar. 17, 2026) (finding good reason to believe there was no significant likelihood of removal of petitioner to Russia in reasonably foreseeable future in part because 2024 publication showed that "the U.S. Government has classified Russia as 'uncooperative,' a label attached to countries that 'hinder[] ICE's removal efforts . . . .'"); *Lapshin v. Bondi*, No. C25-2245, 2026 WL 71407, at *2–3 (W.D. Wash. Jan 9, 2026) (finding it unlikely Russia would process petitioner's travel documents in the reasonably foreseeable future because, according to 2024 ICE publication, Russia is "uncooperative" in effectuating removals). Respondents do not respond to this argument or provide any evidence that their ability to execute removals to Russia has improved since 2020. In fact, despite Petitioner's arguments, they give no evidence at all supporting their assertion that Russia will accept Petitioner. *See generally* Dkt. No. 5.

Given Respondents' previous, failed efforts to remove Petitioner to Russia, Petitioner's current detention length without convincing evidence of any prospect of removal, and unrebutted evidence of Respondents' challenges in effectuating removals to Russia, Petitioner has satisfied his burden under *Zadvydas*. Other courts in this District have found the same in similar cases. *See, e.g.*, *Saley v. Scott*, No. C26-797, 2026 WL 914810, at *3 (W.D. Wash. April 3, 2026) (petitioner from USSR met burden to show removal to Russia was not reasonably foreseeable where ICE had already tried, and failed, to remove him to Russia, Russian Consulate had never issued travel document for him, and he evidently had no citizenship in any country); *Magomedov*, 2026 WL 747102, at *2; *Lapshin v. Bondi*, 2026 WL 71407, at *2–3.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 11

**4.      Respondents Have Not Met Their Burden Under *Zadvydas***

Respondents hold the burden of rebutting Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents must "respond with evidence sufficient to rebut that showing." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 723 (W.D. Wash. 2025) (quoting *Zadvydas*, 533 U.S. at 701). The Court is unconvinced by Respondents' rebuttal here.

To begin, Respondents have made no showing that Russia is currently accepting Russian nationals who reside in the United States, nor that this current attempt to remove Petitioner will be different from their last attempt. Given Russia's history of uncooperativeness, Respondents needed to make a showing that things have changed, yet all they provide the Court is that they "anticipate[] Russia will issue the travel document." Dkt. No. 5 at 15.

Respondents assert that they are "actively pursuing a travel document from Russia," (*id*. at 2) and that "ICE is in the final stages of submitting a travel document request to his home country of Russia and ICE anticipates Russia will issue the travel document" (*id*. at 9). Despite this assurance, Respondents provide no evidence or explanation as to why they believe this to be the case. Their statement is no more than an assertion without support. This, paired with Russia's uncooperative removal history, does not inspire confidence that Respondents are correct. Moreover, Respondents' efforts toward getting a travel document do not make removable reasonably foreseeable. *See e.g. Tran v. Noem*, No. C25-1523, 2025 WL 3268491, at *3 (E.D. Cal. Nov. 24, 2025) (assertion that the government was "actively working on obtaining a travel document for Petitioner to Vietnam" was insufficient to show removal was reasonably foreseeable); *Phan v. Beccerra*, No. C25-1757, 2025 WL 1993735, at *5 (E.D. Cal. July 16, 2025) ("Respondents' intent to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Hambarsonpour v. Bondi*,

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 12

No. C25-1802, 2025 WL 3251155, at *2–3 (W.D. Wash. Nov. 21, 2025) (respondents' continued assertions over the course of weeks that they would receive travel documents "soon" and "in the next weeks" did not make removal reasonably foreseeable).

Finally, Respondents argue that "Petitioner's 'recalcitrant refusal to cooperate in effectuating his removal' is the reason why he remains in detention." Dkt. No. 5 at 9 (quoting *Pelich v. INS*, 329 F.3d 1057, 1062 (9th Cir. 2003)). In support of this, Respondents assert that "On October 30, December 16, and December 26, 2025, ICE requested that Petitioner complete a Russian TD application. On each occasion, he refused." Dkt. No. 5 at 9. Respondents go on to argue that "[w]hen Petitioner withheld biographical information, did not participate in interviews with ERO, or refused to provide identification documents, ERO was impacted in gathering the information which consulates, including the Russian consulate, need to verify a person's identity or nationality." *Id*. Because of this refusal to fill out travel document applications, Respondents believe that Petitioner's "length of detention in this case must be lengthened . . . ." *Id*.

However, *Pelich* is inapplicable to this case. The *Pelich* court based its holding on a provision of the INA allowing the removal period to be tolled based on a noncitizen's noncooperation with removal:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Pelich*, 329 F.3d at 1059 (quoting 8 U.S.C. § 1231(a)(1)(C)). Here, though, the removal period lapsed in 2012, after which Petitioner was released on an OSUP pursuant to Section 1231(a)(3). All the alleged acts of non-cooperation Respondents point to in support of this argument occurred years later, after Petitioner had been re-detained for violating his OSUP—far outside

the removal period. If Petitioner's detention is authorized by the INA at all, it must be by Section 1231(a)(6), which authorizes detention past the removal period for, in relevant part, noncitizens who have been determined to be a risk to the community or unlikely to comply with an order of removal. The *Pelich* court found that this distinction is essential, because "the provision under which Pelich [wa]s being detained, 8 U.S.C. § 1231(a)(1)(C), does not present the same constitutional concerns raised by 8 U.S.C. § 1231(a)(6), the provision at issue in *Zadvydas*." *Pelich*, 329 F.3d at 1059–60. So *Pelich*'s holding simply cannot apply to Petitioner's case.

Even if *Pelich* were not straightforwardly inapplicable, its underlying facts would still be distinguishable from Petitioner's case in important ways. In *Pelich*, the INS sought travel documents from Poland for the petitioner. *Pelich*, 329 F.3d at 1058. After receiving documents from the INS, the Polish consulate responded with a passport application it needed the petitioner to fill out to determine that he was eligible for Polish travel documents. *Id*. The petitioner initially declined to fill out the application, and when he finally agreed to fill it out, he lied about his name, his nationality, and where he was born. *Id*. The petitioner also provided the INS with conflicting information regarding his parents' names and his parents' birthplaces and residences. *Id*. at 1059. As a result, Poland denied the passport application "without recourse." *Id*. at 1058. The *Pelich* court found that the petitioner's detention was not indefinite because "the length of detention is in direct proportion to the detainee's recalcitrant refusal to cooperate in effectuating his removal." *Id*. 1062.

Unlike the petitioner in *Pelich*, Petitioner's refusal to fill out a travel document application has not stopped Respondents from providing Russia with the documents it needs to provide a travel document. In fact, Respondents have now, on two occasions, been able to put together a travel document application to Russia without Petitioner's participation. *See* Dkt. No. 5 at 5 (Respondents provided travel document application to Russia in 2012 without

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 14

Petitioner's participation); *Id*. at 10 (Respondents completed a travel document package during Petitioner's current detention without Petitioner's participation). Further, the one and only time Respondents provided a travel document application to Russia, Russia never responded—a result that is no fault of Petitioner's. Dkt. No. 6 ¶ 9. Additionally, unlike the petitioner in *Pelich*, Petitioner has not lied in an application to the intended removal country, thereby resulting in a denial of travel documents "without recourse." The conduct of the petitioner in *Pelich* is significantly more extreme than Petitioner's conduct, and the outcomes are much different, thus leaving the Court to find the case to be inapposite.

Moreover, even if the two cases were analogous, Respondents do not provide the Court with a timetable for how much longer Petitioner's detention period should be lengthened. *See generally* Dkt. No. 5. Respondents do not attempt to quantify, in any way, how much additional time it took for them to put together a travel document application to Russia due to Petitioner's unwillingness to fill out the application. Instead, Respondents simply say that the six-month presumptively reasonable period should be extended by a "reasonable" amount of time. *See* Dkt. *Id*. at 9 ("ICE 'shall have a reasonable period of time in order to affect the [noncitizen's] removal.'" (citing 8 C.F.R. § 241.4(g)(1)(ii) for "reasonable" assertion)). But Respondents do not provide any guidance as to what a "reasonable time" might be in this context, especially where Respondents have already been trying for several months without success to secure travel documents from Russia. Without evidence as to how much additional time Petitioner's refusal to fill out a travel document application allegedly added to Respondents' completion of the application, this Court cannot make the finding Respondents request.

Accordingly, pursuant to *Zadvydas*, Petitioner has demonstrated that his continued detention is unlawful. A writ of habeas corpus is thus warranted with respect to Petitioner's ongoing detention.

**B.**     **Re-Detention and Due Process**

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).

In *Mathews*, the Supreme Court established a three-part balancing test determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since

then. *See, e.g.*, *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025). Consistent with persuasive authority, the Court will evaluate Petitioner's claims under *Mathews*, considering each factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

### 1.    First *Mathews* Factor: Petitioner's Private Interest in His Liberty

As to the first *Mathews* factor, Petitioner has a considerable private interest in his liberty. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (a noncitizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). The Ninth Circuit has found that "a detained person's liberty interest is substantial." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022). Respondents concede the "weighty" liberty interest implicated by their detention of noncitizens, but argue that Petitioner does not get "ongoing, limitless freedom from detention" after committing criminal offenses in violation of his OSUP. Dkt. No. 5 at 10–11.

However, the Court finds that Petitioner's reliance on his liberty interest was diminished after he was convicted of the criminal offenses for which Respondents revoked his OSUP—the November 5, 2024, Unlawful Possession of a Weapon and August 12, 2025, Hit and Run Vehicle/Property. *See* Dkt. No. 7-6 at 2. Petitioner argues that his liberty interest is weighty, that he's owed due process in his detention, and that individuals previously released by ICE have a heightened liberty interest. Dkt. No. 1 at 11. While this is all true, Petitioner does not discuss any authority that says his liberty interest remains the same when he is convicted of a criminal

offense, in violation of his OSUP, that results in the revocation of the OSUP just two months later. Petitioner does not even attempt to rebut Respondents' arguments in his traverse. *See generally* Dkt. No. 8.

Therefore, the Court cannot find that this factor weighs in favor of Petitioner. At best, the first *Mathews* factor is neutral.

### 2.    Second *Mathews* Factor: The Risk of Erroneous Deprivation of Liberty

The second *Mathews* factor weighs in favor of Respondents. Petitioner argues that his "prior release to the community on an OREC [*sic*] reflected ICE's determination that [he] was neither a flight risk nor a danger to the community." Dkt. No. 1 at 11 (citation modified). He goes on to argue that his re-detention without any change in circumstances or procedure creates a high risk of erroneous deprivation of liberty. *Id*. But in this section of his *Mathews* analysis, Petitioner does not actually attack the procedures that were given to him when he was re-detained, therefore, his stance is not sufficiently developed for the Court to make a finding that this factor weighs in his favor. Moreover, it does appear that Petitioner had an opportunity, at least at his informal interview, to respond to his 2024 and 2025 convictions as the basis of his re-detention. If there was any question that these convictions existed (and that he violated his OSUP in committing the underlying offenses), he could have contested them at that time, but he did not.

Therefore, the second *Mathews* factor weighs in Respondents' favor.

### 3.    Third *Mathews* Factor: Respondents' Interest in Re-Detention Without a Pre-Deprivation Hearing

Petitioner argues that Respondents' interest in detaining him without a pre-deprivation hearing is low. *Id*. at 11–12. Further, Petitioner argues that "[w]hile a pre-detention process would impose some administrative burden, that burden is minimal when weighed against the fundamental liberty interest at stake and the high risk of erroneous deprivation. Providing

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 18

effectively no pre-deprivation process, as ICE did here, is constitutionally insufficient." *Id*. (citing *Lecky v. Bondi*, No. C25-2637, 2026 WL 266066, at *8 (W.D. Wash. Feb. 2, 2026)).

Petitioner was subject to an OSUP, meaning any revocation is governed by 8 C.F.R. § 241.13(i). It appears that Respondents complied with this regulation at the time they detained him. *See infra* Section III.C. Further, Section 241 does not require Respondents to provide a pre-deprivation hearing before revoking a noncitizen's OSUP, and Petitioner does not offer analysis alleging that revocation under 241 does not provide sufficient due process or explaining why a *pre-detention* hearing is specifically required in a situation like his.[4] Without argument as to why the revocation process he was given violates due process, this section too, is insufficiently developed for the Court to make a finding that this factor weighs in his favor. Lastly, several of the cases Petitioner cites for support do not find that, for noncitizens in the community on an OSUP, a pre-deprivation hearing is required before *any* re-detention. *See* Dkt. No. 1 at 12 (citing *Huy Van Tran v. Bondi*, No. 2:25-2335, 2025 WL 3725677, at *8 (W.D. Wash. Dec. 24, 2025) (ordering "Petitioner shall not be re-detained without notice and an opportunity to be heard unless Respondents have evidence detention is authorized under 8 C.F.R. §§ 241.13(i)(1) or (2)."); *Rodriguez v. Bondi*, No. C25-2167, 2025 WL 3466925, at *3 (W.D. Wash. Dec. 3, 2025) (finding OSUP can be revoked pursuant to 8 C.F.R. § 241.13(i)(2), and ordering respondents not to re-detain noncitizen "without providing adequate notice of the reasons for his re-detention and a meaningful opportunity to respond.")).

---

[4] In his traverse, Petitioner makes arguments that Section 241, specifically, the informal interview and the lack of review by a neutral arbiter of ICE's decision, does not comport with due process. Dkt. No. 8 at 8. While compelling, the Court will not consider such a monumental argument that is raised for the first time in reply, as Respondents will not have an opportunity to respond. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) (affirming district court after it declined to consider an argument raised for the first time in reply)). Notably, in the petition, Petitioner notes that "revocation of a noncitizen's release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release," but decides not to argue that the regulation violates due process. Dkt. No. 1 at 13.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 19

Therefore, the third *Mathews* factor weighs in favor of Respondents.

\*       \*       \*

In sum, one *Mathews* factor is neutral and two favor Respondents. The Court finds that the record shows that Petitioner's due process rights were not violated.[5]

**C.      Respondents' Compliance with 8 C.F.R. § 241.13**

Petitioner also argues that "Respondents have not complied with their obligations under 8 C.F.R. § 241.13 and therefore Mr. Savinskiy is entitled to release." Dkt. No. 1 at 22. Specifically, he asserts that Respondents did not determine that Petitioner would be removed in the reasonably foreseeable future; to the extent Respondents made such a determination, they lacked basis to do so; Petitioner did not receive a timely notification in writing of the revocation; Respondents never conducted an informal interview; Petitioner did not have an opportunity to respond to the revocation; and Respondents did not advise Petitioner of his right to request a review of the detention and Respondents did not comply with review requirements. *Id*. at 23.

The relevant regulation authorizes revocation of an OSUP on the basis that has been violated, regardless of any likelihood of removal. 8 C.F.R. § 241.13(i)(1).[6] As for the required procedure, the regulation provides:

> Upon revocation, the [noncitizen] will be notified of the reasons
> for revocation of his or her release. The Service will conduct an
> initial informal interview promptly after his or her return
> to Service custody to afford the [noncitizen] an opportunity to
> respond to the reasons for revocation stated in the notification.
> The [noncitizen] may submit any evidence or information that he
> or she believes shows there is no significant likelihood he or she be
> removed in the reasonably foreseeable future, or that he or she has

---

[5] Petitioner also offers two sentences of argument that his substantive due process rights were violated. *See* Dkt No. 1 at 23. However, this section makes general allegations without applying them to the facts of this case. This issue is not sufficiently briefed for the Court to consider it.

[6] Notably, however, re-detention on the basis of an OSUP violation is authorized under the regulation only "for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released." 8 C.F.R. § 241.13(i)(1). The period of authorized detention lapsed on April 30, 2026.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 20

not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

The Court finds that the record reflects that Respondents revoked Petitioner's OSUP on the basis of OSUP violations (Petitioner's 2024 and 2025 convictions), provided Petitioner with the notice of revocation form, and conducted an informal interview on the same day. At Petitioner's ICE check-in, the ICE officer provided Petitioner with a notice of revocation of release form, which indicated that the reason for the revocation was due to his convictions from 2024 and 2025. *See* Dkt. No. 7-6 at 2. Next, the ICE officer conducted an informal interview of Petitioner. *See* Dkt. No. 7-7 at 2. Although the Court is troubled by the fact that the ICE officer did not fully complete the informal interview form—omitting whether Petitioner provided a written statement or any documents to contest the reason for the revocation—the oral statement Petitioner gave did not contest the reasons for the revocation. *See id*. And it is notable that those convictions, which amounted to violations of his OSUP, provide a valid lawful basis for the OSUP's revocation. Although the record is silent as to what happened next in this interview, there is no evidence that Petitioner contested the validity of the convictions, nor does he do so now. If the underlying convictions were disputable, surely Petitioner would have raised that issue before the Court. But Petitioner's arguments make no mention of his convictions. *See* Dkt. No. 1 at 22–23. Accordingly, because Respondents provide a record that Petitioner was given an informal interview and gave an oral response, and because Petitioner makes no arguments that he attempted to contest his convictions, the Court finds that Petitioner has not made a showing that Respondents violated Section 241.13.

**D.      Request for Injunctive Relief Regarding Re-Detention**

Petitioner seeks a permanent injunction preventing Respondents from re-detaining him "without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released." Dkt. No. 1 at 26. He also requests the Court order Respondents to meet a specific sub-set of conditions prior to any re-detention, namely, that Respondents: (1) obtain a valid travel document to a third-country for Petitioner; (2) provide the valid travel document to Petitioner and his counsel; (3) give Petitioner the opportunity to challenge third country removal; and (4) not re-detain Petitioner unless they have already made concrete arrangements for him to be put on a flight to a third country in the reasonably foreseeable future. *Id*. In response, Respondents argue that these requests "exceed the narrow scope of habeas review." Dkt. No. 5 at 15–16.

As explained above, *see supra* Sections III.B–C, Petitioner fails to show that his re-detention violated due process or was otherwise unlawful. Under the first *eBay* prong for injunctive relief, therefore, he fails to show that the nature of his re-detention led to irreparable injury. Therefore, the Court DENIES Petitioner's requests for injunctive relief related to potential future re-detention.

**E.      Request for Injunctive Relief Regarding Third Country Removal**

Petitioner also makes requests of the Court related to the prospect of Respondents attempting to remove him to a third country. First, Petitioner requests that the Court "Order that Respondents may not remove or seek to remove Mr. Savinsky to a third country without notice and meaningful opportunity to respond in compliance with the [INA] and due process in reopened removal proceedings." Dkt. No. 1 at 27. Next, Petitioner requests that the Court "Order that Respondents may not remove Mr. Savinskiy to any third country where he is likely to face

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 22

imprisonment or other punishment upon arrival." *Id*. In response, Respondents state "[t]here is no indication at this time that ICE is seeking to remove Petitioner to a third country." Dkt. No. 5 at 2. Respondents further argue that Petitioner's "punitive third country banishment" argument fails because it lacks any factual basis demonstrating that the third-country removal policy is unconstitutional either on its face or as applied to the facts here." *Id*. at 14.

### 1.    Third-Country Removal Process

#### a.    Existing DHS Policy

Under the INA, removal to a third country is permissible *only* if it is "impracticable, inadvisable, or impossible" to remove a noncitizen to: (a) the country the noncitizen has designated for removal; (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from which the individual was admitted to the United States, or which contains the port from which they disembarked for the United States or a contiguous territory; or (d) the noncitizen's country of birth (or the country that now contains their birthplace) or immediate previous residence. 8 U.S.C. § 1231(b)(2)(E). Under such circumstances, the government may remove the noncitizen to "another country whose government will accept [them] into that country." *Id.* § 1231(b)(2)(E)(vii). Even then, the government may not remove any person to a country where they will be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16, 1208.16. Where third-country removal is anticipated, due process requires, *inter alia*, notice of the country to which the noncitizen will be removed that is not be provided "last minute," but instead with sufficient time for the noncitizen to have a meaningful opportunity to apply for fear-based protection from removal. *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999). Courts in this District have found, and this Court agrees, that such notice must consist of "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)," and that the noncitizen must be affirmatively asked whether they

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 23

fear persecution or harm upon removal to the third country, with their response memorialized in writing. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019).

If a noncitizen claims fear of removal to a designated third country, courts in this District have repeatedly held that ICE must give the petitioner an opportunity "to pursue [a] claim for withholding of deportation in reopened removal proceedings before an immigration judge." *Abubaka v. Bondi*, No. C25-1889, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025); *see Arenado-Borges v. Bondi*, No. C25-2193, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025) (collecting cases). These district court cases are not binding, but Respondents offer no reason the Court should not follow them. The Court finds the reasoning in *Aden* and the other cited cases (*see* Dkt. No. 1 at 16) persuasive and concludes that constitutionally and statutorily compliant notice requires that, before Petitioner may be removed to a third country, he must be given an opportunity to respond, and reopened removal proceedings before an Immigration Judge.

Petitioner argues that DHS's policy memo is proof that Respondents' third country removal procedures do not comport with due process. *See id*. at 18–19. Courts in this District and Circuit have repeatedly held that those procedures fall far short of what is required by due process. *See, e.g.*, *Rea-Hernandez v. Bondi*, No. C25-2609, 2026 WL 322874, at *9 (W.D. Wash. Feb. 6, 2026) ("Alarmingly, this policy provides that "[i]f the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed *without the need for further procedures*."); *Francisco Lorenzo v. Bondi*, No. C25-2660, 2026 WL 237501, at *9–10 (W.D. Wash. Jan. 29, 2026) (finding that Respondents' third-country removal policy, as described in the July 9, 2025, memorandum, "simply do[es] not comport with due process"); *Escobar v. Chestnut*, No. C25-1801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 24

that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent." (collecting cases)). The Court will not spend more time repeating those reasons here, except to reiterate that the widely circulated DHS policy does not inspire confidence that Respondents can be relied upon to afford Petitioner with a statutorily and constitutionally sufficient process absent an order from this Court.

### b.    Third-Country Removal Without Due Process

Here again, the *eBay* factors govern Petitioner's request.

As to the first factor, Respondents argue that Petitioner does not provide any information or proof that he would be subject to third-country removal and, thus, the claim is "purely conjectural and nonjusticiable" Dkt. No. 5 at 15. Respondents go on to say that "ICE is solely pursuing removal to Petitioner's home country of Russia, and ICE anticipates Russia will issue the travel document." *Id*. However, Petitioner has raised, and the government has not rebutted, serious doubts that removal to Russia will ever be possible. Notably missing from Respondents' assertions regarding third-country removal is any statement assuring they will not shift their efforts to removing Petitioner to a third country if he cannot be removed to Russia, as the evidence suggests. Respondents routinely seek out third-country removal when they cannot remove a noncitizen to the noncitizen's home country. *See, e.g.*, *Yousufi v. Hermosillo*, No. C25-2098, 2026 WL 482416, at *1 (W.D. Wash. Feb. 20, 2026) (respondents expressed intent to remove petitioner to third country); *Alfonso v. Bondi*, No. C25-2748, 2026 WL 395326, at *1, 3 (W.D. Wash. Feb. 12, 2026) (same); *Emara v. Bondi*, No. C26-116, 2026 WL 266067, at *2 (W.D. Wash. Feb. 2, 2026) (same); *Elshourbagy v. Bondi*, No. C25-2432, 2025 WL 3718993, at *1 (W.D. Wash. Dec. 23, 3035) (same); *Baltodano v. Bondi*, 815 F. Supp. 3d, 1191, 1195 (W.D. Wash. 2025) (same). Attempting to remove Petitioner to a third country would appear to be the predicable next step under DHS's third-country removal policy, and Respondents present no

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 25

evidence that this policy has changed. Although Respondents' return memorandum treats third-country removal as merely speculative, the Court finds it to be a likely prospect under these facts. Therefore, Petitioner is left no choice but to seek such relief now, before it is too late. This Court and others in this district have repeatedly found that DHS's third-country removal policy is inconsistent with due process, and that noncitizens at risk of being subjected to the policy require the protection of injunctive relief. *See, e.g., Nguyen v. Bondi*, No. 2 No. C25-2024, 2025 WL 3534168, at *8 (W.D. Wash. Dec. 10, 2025) (citing July 9, 2025, Memorandum to Employees and noting that under the memo ERO will "generally wait at least 24 hours following service of the Notice of Removal before effectuating removal," but in "exigent circumstances," ERO need wait only six hours; *Nguyen*, 796 F. Supp. 3d at 728 (same). Here, Petitioner meets all the factors under *eBay*. First, he has shown that he suffered irreparable injuries for which monetary damages are likely unavailable or inadequate to compensate him: his unconstitutional detention period. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Second, only injunctive relief can prevent Petitioner from suffering that injury again if Respondents attempt to remove him to a third country without the protections required by the Due Process clause—and even graver injury if a constitutionally deficient removal is effectuated. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an imminent threat of severe, irreparable harm"). Were Petitioner to be "removed from the United States to the custody of a foreign sovereign . . . the Government [might] argue[], as it has previously argued, that no U.S. court ha[s] jurisdiction to order relief." *Id.* at 93. That is, the legal remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely. Third, in light of such serious harm to Petitioner, the balance of equities

tips steeply in his favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Respondents of providing notice and an opportunity to be heard if they wish to remove him. Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citation modified). Under these circumstances, injunctive relief is appropriate.

Because Petitioner has demonstrated that injunctive relief is warranted, the Court will grant Petitioner's request to "[o]rder that Respondents may not remove or seek to remove Mr. Savinsky to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings."[7] Dkt. No. 1 at 27.

### 2.    Punitive Third-Country Banishment

In addition to the procedural concerns discussed above, Petitioner further alleges that his potential third-country removal pursuant to Respondents' current policy would violate the Eighth Amendment's prohibition of cruel and unusual punishment, the Fifth Amendment's prohibition of extrajudicial punishment, and the long-established rule, dating to *Wong Wing* in 1896, 163 U.S. at 228, that no "infamous punishment" in addition to deportation may be imposed for immigration violations without a proper criminal trial. Dkt. No. 1 at 25.

In support of this argument, Petitioner asserts that it has been reported that Respondents have "attempted—and completed—an 'end-run' around the protections of the Convention Against Torture by deporting a group of migrants to Ghana, which sent them on to their

---

[7] Because the Court grants injunctive relief, it need not address Petitioner's arguments that Respondents' third country removal procedures violate the Convention Against Torture, the INA, or the Administrative Procedures Act. *See* Dkt. No. 1 at 23.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 27

countries of citizenship despite fears of persecution." *Id.* at 18. Petitioner alleges that the Trump administration has hand-picked countries known for human rights abuses and instability for its deportations, in an attempt to spread fear and deter immigration, and that hundreds of noncitizens have been removed to third countries only to be met with mistreatment and summary, sometimes indefinite, detention. *Id.* at 18–19. The Court notes that Petitioner does not substantiate these allegations. But it also notes that Respondents do not deny them, and that "courts in this district and across the country have recognized that Petitioner is correct: the government is intentionally removing individuals to countries where they will be imprisoned." *Nguyen v. Bondi*, 2025 WL 3534168, at *9 (citing *Nguyen*, 796 F. Supp. 3d at 734 (collecting cases)).

In this particular case, faced with the particular pleadings before it, the Court does not have sufficient basis for a finding that Respondent's third-country removal program is unconstitutional as a whole, or that third-country removal would be punitive as applied to Petitioner specifically. Cases in this District in which courts *have* found as much, "which were specific to a particular population and particular destination countries, do not extend to these circumstances." *Arenado-Borges*, 2025 WL 3687518, at *7 (citing *Nguyen*, 796 F. Supp. 3d at 734; *Abubaka*; 2025 WL 3204369, at *8.)

On this record, the Court cannot find that Petitioner's removal to a third country would constitute unconstitutional punishment. The request is DENIED without prejudice.

## IV.    CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

> (1)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a)   SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under his previous conditions of supervision;

(b)   SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release, a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(c)   Petitioner's request for a permanent injunction regarding re-detention is DENIED.

(d)   Respondents are PROHIBITED from removing Petitioner to any third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.

Dated this 1st day of May, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 29